**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

EJ Welch Co., Inc.,

Plaintiff,

v.

Roy Rueb, a Minnesota resident, MIDWEST FLOOR SOURCE, INC., a Minnesota corporation, LIVE VENTURES, INC., a Nevada corporation, FLOORING LIQUIDATORS, INC., a California corporation, MARQUIS INDUSTRIES, INC., a Georgia corporation, 10K LAKES PARTNERS LLC, a Minnesota limited liability company, and DOES 1-10,

Defendants.

No. 24-cv-2779 (NEB/SGE)

**ORDER**

---

This matter is before the Court on Plaintiff E.J. Welch's Motion to Amend Pleadings. (Dkt. 237.) The Defendants oppose the Motion. (Dkts. 256, 258.) For the reasons discussed below, Plaintiff's Motion to Amend is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

This is a trade secret misappropriation and unfair competition lawsuit. (Dkt. 1.) Plaintiff, E.J. Welch Co., Inc., was a distributor and supplier of flooring materials to residential and commercial contractors, builders, and retailers across the United States. (*Id.* ¶ 8.) Defendants in this action are Roy Rueb, Midwest Floor Source, Inc., Live Ventures, Inc., Marquis Industries, Inc., Flooring Liquidators, Inc., 10K Lakes Partners LLC, and Doe Defendants 1 through 10, E.J. Welch's competitors. (Dkt. 193.)

Roy Rueb was Plaintiff's former Regional Vice President of Sales and Operations from January 2022 until he resigned from his position on June 2, 2023 and formed Midwest Floor Source, Inc. ("MFS"). (Dkt. 1 ¶¶ 7–9, 14, 22–26, 68; Dkt. 239 at 3.) Plaintiff originally sued Rueb, MFS, and Live Ventures (MFS's parent company) alleging that Rueb discussed competing against Plaintiff with Stephen Kellogg, a Live Ventures-affiliated executive in 2023 while Rueb was still Plaintiff's employee. (*Id.* ¶ 33, 63, 137.) Plaintiff also claimed that Rueb copied "thousands of business records" to a personal storage drive before his departure and recruited E.J. Welch employees to join MFS. (*Id.* ¶¶ 40–56.)

The Court originally set April 1, 2025, as the deadline to amend pleadings. (Dkt. 51.) Thereafter, Plaintiff moved to amend the Complaint and the parties stipulated to extend the deadline for amending pleadings to June 1, 2025. (Dkts. 70, 81, 85, 86.) On May 28, 2025, Plaintiff filed their First Amended Complaint, and added Marquis Industries and Flooring Liquidators, both subsidiaries of Live Ventures, as Defendants. (Dkt. 89.) Plaintiff also claimed that Kellogg "personally participated" in Rueb's recruitment, playing an "instrumental role" in inducing Rueb to form a competing company, and assisted him with setting up "real estate options" for the competing business. (*Id.* ¶¶ 37, 38, 41, 116.)

During this same time, on June 30, 2025, E.J. Welch's parent company, The Merit Distribution Group, LLC ("MDG"), defaulted on its loans, and sold E.J. Welch's assets and liabilities (including this litigation) to Spartan Flooring OpCo, LLC ("Spartan").[1] (Dkt.

[1] Spartan continues to do business under the trade name "E.J. Welch" as dictated by the sale's asset transfer agreement. (Dkt. 239, at 12.) The entity formerly known as "E.J. Welch" now operates under the name, "Old FCo, Inc." (*Id.*)

239, at 12–13; Dkt. 240-23, at 2.) Defendants claim they were unaware of the change in E.J. Welch's corporate makeup because Plaintiff did not report it to the Court or Defendants until April 10, 2026, almost ten months after foreclosure. (Dkt. 258 at 8.)

On March 27, 2026, ten months after filing the First Amended Complaint, Plaintiff again moved to amend their pleadings to add 10K Lakes as a Defendant. (Dkts. 149-159.) Through third-party discovery, Plaintiff learned that 10K Lakes was incorporated in September 2025 to take over MFS's operations. (Dkt. 152 at 30–32.) Plaintiff alleged that 10K Lakes was MFS's alter ego and successor and claimed that MFS's assets were transferred to Kellogg—the sole managing member of 10K Lakes—to satisfy a $1.5 million debt obligation to Kellogg. (*Id.*, at 33-34, 37.)

In furtherance of their Motion to Amend, Plaintiff attached an unexecuted copy of a Memorandum of Understanding ("MOU") that reflected the terms of this transaction. (*Id.*, at 38; *see also* Dkts. 193-16, 193-17.) Although the MOU was a draft document, the signature block on the agreement indicated that Kellogg was signing in his individual capacity and as a seller representative of MFS and its parent entities. (Dkt. 193-17.) By March 27, 2026, Plaintiff knew that this transaction had been executed through Live Ventures' Form 10 K filing and knew that MFS had ceased operations and had no assets left to satisfy creditors. (Dkt. 193 ¶¶ 124–131.) Plaintiff also alleged that Kellogg was the "architect" of the "multi-party scheme" to compete against Plaintiff. (Dkt 193, at 4–6, 27–28.)

At the most recent status conference held on July 30, 2026, the parties agreed to a fact discovery deadline extension to November 12, 2026. (Dkt. 234.) But Plaintiff did not

seek an extension to amend pleadings nor so much as hint that it would move to amend pleadings within a month of the status conference. (Dkt. 231.)

On August 27, 2026, Plaintiff filed a Motion seeking the Court's leave to amend the Complaint for the third time. (Dkt. 239.) The Third Amended Complaint seeks to: (1) add Kellogg as a Defendant, (2) amend its existing allegations based on facts uncovered during discovery, (3) plead additional statutory grounds for relief, (4) plead successor liability as a standalone claim; and (5) add Spartan as a Plaintiff. (*Id.*, at 12–13, 28–29.) Plaintiff argues that it could not have brought this Motion sooner because it did not receive the executed copy of the MOU from Defendants until August 14, 2026. (*Id.*, at 6–8.) It also noted that another lawsuit against Kellogg in a California state court compels Kellogg's addition. (*Id.*, at 11, 19.)

Defendants Roy Rueb and 10K Lakes oppose Plaintiff's Motion, contending that Plaintiff has long known about Kellogg's role in the alleged theft of trade secrets, and intentionally waited until the eleventh hour to include him in this litigation, which has prejudiced their discovery efforts. (Dkt. 257, at 10–11; Dkt. 151, at 14–16.) Defendants Rueb and 10K Lakes also oppose the addition of Spartan as a plaintiff, claiming that adding Spartan this late does not afford Defendants the opportunity to serve discovery requests on Spartan. (Dkt. 257, at 20–21.) The remaining Defendants join Rueb and 10K Lakes in opposing Spartan's addition as a Plaintiff and did not file separate briefs. (Dkt. 256.)

## ANALYSIS

### I. Adding Stephen Kellogg as a Defendant and Amending Claims

When a party seeks to amend the complaint after the deadline provided in a court's pretrial scheduling order, the party must show good cause. Fed. R. Civ. P. 16(b)(4); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715–16 (8th Cir. 2008); *IBEW Loc. 98 Pension Fund v. Best Buy Co.*, 326 F.R.D. 513, 522 (D. Minn. 2018) ("Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a).") (quoting *Popoalii v. Corr. Med. Serv.*, 512 F.3d 488, 497 (8th 2008)).

The touchstone of good cause under Rule 16(b) is the movant's diligence in complying with the deadlines of a scheduling order. *Vonasek v. Bank of the W.*, No. 16-CV-342 (PJS/JSM), 2016 WL 10321581, at *5 (D. Minn. Nov. 10, 2016). "A party does not meet the good cause standard under Rule 16(b) if the relevant information on which it based the amended claim was available to it earlier in the litigation." *IBEW Loc. 98 Pension Fund*, 326 F.R.D. at 522. And when a party is in possession of some—but not all—facts that forms the basis of an amendment and fails to seek leave to amend promptly, the party has not been diligent. *Restoration Builders, Inc. v. Vining*, No. 23-CV-3616 (PJS/SGE), 2024 WL 5233148, at *3 (D. Minn. Dec. 27, 2024). Although prejudice to the nonmoving party resulting from the modification of the scheduling order may also be relevant, generally courts "will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines." *IBEW Loc. 98 Pension Fund*, 326 F.R.D. at 522.

### A. Stephen Kellogg as a Defendant

The relevant question before the Court is whether Plaintiff has been diligent in moving to add Kellogg as a defendant, and if so, whether his addition is prejudicial to Defendants.

#### 1. Movant's Diligence

Plaintiff submits that it did not attempt to add Kellogg to the lawsuit until August 2026 because it did not acquire "material information," until recently. (Dkt. 239, at 11, 18–20.) First, Plaintiff explains that they only recently received an executed copy of the MOU transferring assets from MFS to 10K Lakes, and the asset transfer to 10K Lakes—wholly owned by Kellogg—satisfied a $1.5 million holdback obligation that Kellogg personally held. (*Id.*) Plaintiff also claims that it only recently learned that two of the Defendants to this lawsuit pursued separate claims against Kellogg in a California state court in May 2026. (*Id.*) Plaintiff submits that this information makes Kellogg personally liable for their claims.

Although discovery revealed additional information regarding Kellogg's personal involvement in this matter, this is additional—and not—new information. Indeed, as established above, Plaintiff has known of Kellogg's involvement in hiring Defendant Rueb and setting up a competing business from the inception of the lawsuit. (Dkt. 151, at 5–7.) And when Plaintiff previously moved to amend the claims in March 2026, Plaintiff argued that: (1) Kellogg was as "equally involved" as Defendant Live Ventures; (2) Kellogg was "an architect of this scheme . . . [who] personally sold Rueb on the idea to leave EJ and start this venture;" (3) Kellogg had "advance knowledge of Rueb's employee recruitment

plans;" and (4) Live Ventures began negotiating the transfer of assets to Kellogg, the sole managing member of 10K Lakes. (Dkt. 152, at 6, 9, 13–16, 25.) Additionally, Plaintiff attached an unexecuted copy of the MOU when it last amended its claims. (Dkt. 152, at 38.) The only additional information that Plaintiff did not have at the time was the executed MOU and knowledge of the California case against Kellogg. (Dkt. 239, at 9–11.) Although Plaintiff is correct that the executed agreement would show how the agreement was precisely structured and consummated, that information would, at best, substantiate what Plaintiff already knew. Indeed, Plaintiff could have added Kellogg when Plaintiff added 10K Lakes as a Defendant in its Second Amended Complaint. (Dkt. 189). Thus, Plaintiff's failure to add Kellogg months ago does not evince diligence.

**2. Prejudice to the Non-movant**

A court only considers prejudice to the non-movant if the movant was diligent. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001); *Zikar Holdings LLC v. Ruhland*, No. 24-CV-3721 (JMB/SGE), 2025 WL 3215617, at *2 (D. Minn. Nov. 18, 2025). Generally, there is no prejudice in allowing an amended complaint where the amended claims are substantially similar to those asserted in the original complaint. *Id.* at 694; *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987). But "late tendered amendments" claiming "new theories of recovery . . . [imposing] additional discovery" prejudices the non-movant. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998); *Svoboda v. Trane Co.*, 655 F.2d 898, 900 (8th Cir. 1981).

Because the Court finds Plaintiff was not diligent, it need not consider prejudice to Defendants. Nevertheless, the Court finds that adding Kellogg this late in the case would prejudice the Defendants.

Kellogg, as a newly added defendant, would be entitled to find new legal counsel, new counsel would need sufficient time to review discovery, and both Kellogg and counsel would need time to prepare defenses to the six counts asserted against him. Plaintiff claims adding Kellogg would not prejudice the other Defendants because Kellogg was already on notice he was about to be deposed, and that any additional "discovery directed to Kellogg . . . will substantially overlap with discovery already underway." (Dkt. 239, at 20–21.) This ignores the delay. Although discovery directed to Kellogg may substantially overlap with discovery already underway, discovery that Kellogg must conduct to defend the allegations against him may not overlap with the discovery that Plaintiff has already served. His defenses may not coincide with those of Defendants Rueb and 10K Lakes.

The Complaint in this case was filed on July 18, 2024, litigation has been ongoing for over two years, and Kellogg's addition as a defendant with new theories of liability in a late tendered amendment would significantly delay the proceedings and prejudice the existing Defendants. Plaintiff's Motion for amending Stephen Kellogg as a defendant is therefore denied.

**B. Amended Claims**

Plaintiff also seeks to amend its existing allegations based on facts revealed during discovery, plead two additional statutory grounds for relief[2], plead successor liability against 10K Lakes as a standalone claim separate from the alter ego claim against 10K Lakes, allege claims against Kellogg (among other things) for civil conspiracy, and seek punitive damages from him. (Dkt. 244 ¶¶ 260–271, 283.) The relevant question is again whether Plaintiff has been diligent in moving to add these claims, and if so, whether the addition is prejudicial to Defendants.

Plaintiff argues that the proposed amendments merely seek to supplement or clarify "theories already encompassed" by the Second Amended Complaint. Setting aside the Court's disagreement that asserting new statutory grounds or new theories of relief against a new defendant is a merely supplementing or clarifying amendment, the supposition that these amendments merely clarify cuts against Plaintiff's good cause argument. If the proposed amendments are indeed mere clarifications, Plaintiff may well have alleged these clarifications in the Second Amended Complaint.

To prove that it had good cause, Plaintiff asserts that it could not have brought these claims in the Second Amended Complaint because 10K Lakes had not produced the executed copy of the MOU, leaving Plaintiff in the dark on how the agreement was structured and consummated. (Dkt. 239, at 23.) Plaintiff reiterates that it served discovery promptly to seek this information and thus satisfies the good cause required for a Rule

[2] Plaintiff seeks to void the transfer to MFS under Minn. Stat. § 513.44(a)(2)(i) and (ii) and claim judgment against 10K Lakes and Kellogg. (*Id.*)

16(b) amendment. But diligence is not only measured by prompt service of discovery, but whether Plaintiff could have made these allegations previously and failed to seek the Court's leave to do so. *See Alexander v. 1328 Uptown, Inc.*, No. 18-CV-1544 (ECT/ECW), 2019 WL 9514655, at *3 (D. Minn. June 20, 2019).

The Court finds that Plaintiff could have alleged these new claims in the Second Amended Complaint because (1) Plaintiff fully understood that 10K Lakes was wholly owned and controlled by Kellogg, (2) Plaintiff had the unexecuted copy of the MOU showing the 10K Lakes transaction, (3) Plaintiff knew that the transaction had been executed because Plaintiff was in possession of Live Ventures' Form 10 K filing that reflected the same, and (4) Plaintiff knew that MFS had ceased operations and had no assets left to satisfy creditors. (Dkt. 193 ¶ 124–129, 131.) On these bases, Plaintiff could have "fashioned arguments in support of" additional statutory grounds of relief to reverse the 10K Lakes transaction, asserted its claims against Kellogg (among other things) for civil conspiracy, and sought punitive damages from him months ago. *Target Corp. v. LCH Pavement Consultants, LLC*, 960 F. Supp. 2d 999, 1008 (D. Minn. 2013), *aff'd*, No. 12-CV-1912 (JNE/JJK), 2013 WL 12320416 (D. Minn. 2013). Plaintiff's failure to act thus evinces a lack of diligence.

Plaintiff lastly argues that the amended claims would not prejudice Defendants because the claims introduce no factual issues and do not require additional discovery. Adding new statutory grounds for relief and bringing claims against a new defendant would inevitably require "prepar[ing] new defenses to the suit," and is yet another instance of introducing new theories of liability in a late tendered amendment that prejudices

Defendants. *Soo Line R. Co. v. Werner Enters.*, 12-CV-1089 DSD/JSM, 2013 WL 2434880, at *10 (D. Minn. June 4, 2013), *report and recommendation adopted,* 12-CV-1089 DSD/JSM, 2013 WL 3771391 (D. Minn. July 17, 2013).

Plaintiff's Motion to amend its claims is therefore denied.

## II. Adding Spartan as a Plaintiff

If a transfer of interests happens after a lawsuit has begun "the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. Rule 25(c). Substitution or joinder under Rule 25(c) allows "an action to continue unabated when an interest in a lawsuit changes hands, rather than requiring the initiation of an entirely new lawsuit." *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 191 (8th Cir. 1995).

Substitution or joinder under Rule 25(c) is discretionary. *In re Pork Antitrust Litig.*, No. 18-CV-1776 (JRT/JFD), 2024 WL 2819438, at *3 (D. Minn. June 3, 2024). A court may deny substitution if public policy concerns favor doing so. *Id.* at *4. Although courts have denied substitutions late into litigation[3], substitution under Rule 25(c) is nevertheless distinct from amendments under Rules 15(a) and 16(b). *See Sacerdote v. Cammack Larhette Advisors, LLC*, No. 17-CV-8834 (AT) (VF), 2026 WL 350842, at *5 (S.D.N.Y.

[3] *See, e.g.*, *DeKalb Genetics Corp. v. Pioneer Hi-Bred Int'l, Inc.*, No. 96 C 50112, 2001 WL 869622, at *4 (N.D. Ill. July 31, 2001); *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, No. CIVS022669 FCD KJM, 2006 WL 658100, at *3 (E.D. Cal. Mar. 13, 2006).

Feb. 9, 2026). A court need not consider diligence and prejudice to the non-movant in deciding whether to grant substitution under Rule 25(c). *See id.*

Plaintiff asserts that it is seeking the addition of Spartan now because MDG transferred its assets and liabilities to Spartan, and because Defendant 10K Lakes is using this transfer to resist Plaintiff's discovery requests. (Dkt. 239, at 29—30.) Plaintiff also argues that adding Spartan as a plaintiff does not prejudice Defendants because "the relevant claims, evidence and available defenses" remain the same. (*Id.*)

Defendants argue that Plaintiff has not been diligent and adding Spartan this late in discovery would be prejudicial. (Dkt. 257, at 19–23.) They assert that Plaintiff knew about the MDG-Spartan transaction when it filed its Second Amended Complaint and waited nine months to act. (*Id.*) Defendants also contend that Spartan, as the owner of the trade secrets at issue, would allege additional harm from trade secret misappropriation against Defendants. (*Id.*) Lastly, Defendants accuse Spartan of resisting discovery. (*Id.*)

Although Plaintiff knew of the MDG-Spartan transaction when it filed its Second Amended Complaint in May 2026, Rule 25(c) does not require a showing of the movant's diligence and prejudice to the nonmovant unlike Rule 16(b). *See Sacerdote*, 2026 WL 350842, at *5 ("Imposing a good-cause requirement on Rule 25(c) motions is nonsensical . . . ."). Rather, Rule 25(c) merely "serves as a mechanism to simplify the action and expedite the ultimate resolution." *Id.*

Because Spartan's presence simplifies the action and expedites ultimate resolution, its addition to this case is appropriate. Defendants assert that they are at a loss to determine whether Spartan considers E.J. Welch's assets as trade secrets, whether Spartan has made

efforts to maintain its confidentiality, and whether Spartan has been harmed by the alleged misappropriation. (Dkt. 257, at 19–23.) The efficient way to resolve what Defendants characterize as "key questions that go to the core issues in the case" will be to add Spartan as a plaintiff so that Defendants can directly pose these questions to Spartan. Efficient resolution of the dispute thus favors Spartan's addition

Additionally, public policy reasons favor Spartan's addition. Spartan is not injecting itself into this controversy at the last minute in search of a larger payoff in exchange for funding the litigation. *See Pork Antitrust Litig.*, 2024 WL 2819438 at *3–4 (denying late substitution of a litigation funder during purported settlement negotiations "in search of a larger payoff" as contrary to public policy). It acquired E.J. Welch's assets and liabilities when E.J. Welch's parent company MDG foreclosed. Its addition is proper.

The Court recognizes that fact discovery is due on November 12, 2026, and that Defendants need additional time to serve Spartan with discovery requests. This, however, is remedied by a mutually agreed upon extension of fact discovery deadlines. Plaintiff's request to add Spartan as a plaintiff is thus granted.

## CONCLUSION

Accordingly, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to add Stephen Kellogg as a defendant is **DENIED**,
2. Plaintiff's Motion to amend its claims is **DENIED**,
3. Plaintiff's Motion to add Spartan Flooring OpCo, LLC is **GRANTED**, and
4. The parties are to meet and confer to propose an extension of the fact discovery deadline.

Dated: October 2, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge